CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 08 2011

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BETTY J. DURHAM, | ) |
| | ) Civil Action No. 7:10-cv-00545 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) By: Judge James C. Turk |
| Commissioner of Social Security, | ) Senior United States District Judge |
| | ) |
| Defendant. | ) |

Plaintiff Betty J. Durham ("Durham") brought this action for review of Defendant Michael J. Astrue's ("the Commissioner") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("the Act"), as amended 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this Court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Both Durham and the Commissioner filed motions for Summary Judgment.[1] Oral argument was heard on November 28, 2011. The issue before the Court is whether substantial evidence supports the Commissioner's final decision that Plaintiff can perform a limited range of light work. (R. 26). For the reasons stated below, the Court finds that the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

## I. Standard of Review

When reviewing the Commissioner's final decision, the Court's review is limited to determining whether the Commissioner's findings are supported by substantial evidence and

---

[1] Plaintiff's brief was styled as a Brief in Support of Plaintiff's case, but the Court construes it as a motion for summary judgment.

whether they were reached through the application of the correct legal standards. See 42 U.S.C. § 405(g) (2006); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Accordingly, a reviewing court may not substitute its judgment for that of the Commissioner, but instead must defer to the Commissioner's determinations if they are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); 42 U.S.C. § 405(g). The Commissioner's finding of any fact is conclusive provided it is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401. Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but it is "more than a mere scintilla of evidence [though] somewhat less than a preponderance," Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

## II. Procedural History and Factual Background

Durham was born on June 23, 1967, and was 40 years old at the time she alleges she became disabled. She has a high school education and was previously employed as a knitting machine and sewing machine operator. (R. 28). Durham alleges that she became disabled from all forms of substantial gainful employment on October 16, 2007.[2] (R. 24). Durham alleges her disability continues to this day and is the result of carpel tunnel syndrome and mental limitations.

Durham filed applications for DIB and SSI on October 16, 2007. (R. 22). Her claims were denied on initial consideration and on reconsideration. Thereafter, Durham requested and received a hearing and review before an Administrative Law Judge ("ALJ"). In an opinion dated February 4, 2010, the ALJ also denied Durham's requests for benefits determining that she was not disabled. Specifically, the ALJ determined that Durham had several impairments that met the definition of a severe impairment under 20 C.F.R. §§ 404.1520(c) and 416.920(c): carpal

---

[2] Plaintiff's brief indicates a disability onset date of August 3, 2006, but this appears to be a typographical error.

tunnel syndrome, recurrent major depression, and panic disorder. (R. 24). However, the ALJ found that none of these impairments met or was medically equal to a listed impairment, as defined in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 25). The ALJ determined that Durham had the residual functional capacity ("RFC") to:

> [P]erform light work ... except for that which requires more than occasional pushing or pulling with the upper extremities or cannot be done by an individual who has moderate deficiencies of concentration, persistence, or pace.

(R. 26). Based on this RFC the ALJ found that although Durham could not perform any of her past relevant work, there were jobs at the light and unskilled level of exertion that Durham could perform, such as counter/rental clerk and usher/lobby attendant. (R. 29). The Commissioner adopted the ALJ's opinion, and Durham now appeals.[3]

### III. Discussion

Plaintiff's Motion for Summary Judgment advances two arguments in support of her request that this Court reverse the findings of the ALJ, as not supported by substantial evidence. In her brief, Durham argues primarily that the ALJ's findings concerning the extent of her mental limitations are not supported by substantial evidence and secondarily that the ALJ's findings regarding her physical limitations, as a result of her diagnosis with carpal tunnel syndrome, are not supported by substantial evidence. However, at oral argument, Plaintiff's counsel stated her primary argument is that the ALJ's findings regarding Durham's physical limitations are not supported by substantial evidence. After reviewing the record in this case, the Court finds that Plaintiff's arguments lack merit and that the Commissioner's final decision is supported by substantial evidence.

---

[3] Durham has met the insured status requirements of the Act at all relevant times covered by the Commissioner's final decision. 42 U.S.C. §§ 416(i) & 423(a).

3

## A. The ALJ's Finding that Plaintiff Has Moderate Deficiencies of Concentration, Persistence, or Pace is Supported by Substantial Evidence.

Durham asserts that the ALJ should have put more weight on the treatment notes of Plaintiff's long-term mental health provider, Mt. Rogers, and less weight on the opinion of Dr. Berry, Psy.D., who performed a consultative exam on Durham. (R. 459). Durham further states that her client should not be prejudiced by the fact that Mt. Rogers does not provide residual functional capacity ("RFC") evaluations. This Court rejects Durham's argument, finding that the ALJ's decision as to Durham's mental capabilities is supported by substantial evidence.

The applicable regulations dictate that in deciding how much weight to give any medical opinion, the ALJ must consider (1) whether the physician conducted an in-person examination of the claimant; (2) the treatment relationship between the physician and the claimant, including the length of the relationship and the nature and extent of the treatment; (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, (5) whether the opinion comes from a specialist, and (6) any other factors that tend to support or contradict the opinion. See 20 C.F.R. §§ 404.1527(d)(1)-(6); 20 C.F.R. §§ 416.927(d)(1)-(6). See also Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). Moreover, if a treating physician's opinion is not given controlling weight, the ALJ is required to "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist...." 20 C.F.R. § 404.1527(f)(2)(ii); 20 C.F.R. § 416.927(f)(2)(ii).

The ALJ appropriately afforded the State reviewing psychologists "great weight" because their opinions were "consistent and well-supported." (R. 28). In August 2008, Dr. Joseph I. Leizer, Ph.D., reviewed Durham's medical history. (R. 391-393). Specifically, he found that Durham was "moderately limited" in several areas including categories pertaining to her

understanding and memory, sustained concentration and persistence, social interaction, and ability to adapt. (R. 391-2). Dr. Leizer concluded that Durham would "be able to perform the mental demands of simple, unskilled and nonstressful work." (R. 393). Dr. A. John Kalil, Ph.D., also reviewed Durham's records in August 2008, and reached the same conclusion as Dr. Leizer. (R. 418).

The Court's review of the record reveals that the opinions of the State reviewing psychologists are consistent with the record as a whole. After performing a consultative examination on October 13, 2009, Dr. Berry opined that Durham's symptoms meet the criteria for Major Depressive Disorder and Panic Disorder, but did not meet the criteria for a diagnosis of Bipolar Disorder. (R. 462). Specifically, Dr. Berry noted Durham had moderate limitations of her ability to understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with co-workers, and respond appropriately to usual work situations and to changes in a routine work setting. (R. 464-5). In a similar vein, treatment notes provided by Dr. Clay at Mt. Rogers indicate that although Durham displays ongoing symptoms of anxiety and depression, in October 2007, Durham's cognition was "concrete," her insight was "fair," and her judgment "grossly intact." (R. 442). Similar observations were made in November 2007, (R. 441), March 2008, (R. 439), September 2008, (R. 436), April 2009, (R. 433), and July 2009 (R. 432).[4] Moreover, in October 2009, both Dr. Berry and Mt. Rogers performed Global Assessment of Functioning ("GAF") evaluations. Dr. Berry found Durham scored a 61, (R. 462), while Mt. Rogers found Durham scored a 65, (R.

---

[4] The Court also notes that older records, from Dr. Graham, who treated Plaintiff between December 2006 and March 2007, indicate that Durham was doing well from a psychiatric standpoint. In December 2006, Dr. Graham stated that "[t]here is no evidence of persistent depression, hopelessness or suicidal or violent ideations. She demonstrates no active evidence of delusions, hallucinations or thought disorder. Her orientation is intact. Her attention and concentration are intact." (R. 358). Dr. Graham made similar observations in March 2007, (R. 359), and July 2007. (R. 361).

5

469), both indicating that Durham only suffered from mild symptoms or some difficulty with appropriate social functioning.

Second, the opinions of the State reviewing psychologists are supported by Plaintiff's own statements to Mt. Rogers and Dr. Berry. For example, in January 2009, Durham reported that she was "feeling better or would be if [the financial stressful situation] wasn't happening." (R. 434). As of July 2009, Durham reported that her medications were helping her cope with her stress and helping her to sleep better. (R. 450-51).[5] Plaintiff also noted that she was able to perform housework and keep in touch with her family by phone. (R. 450). Finally, during the consultative exam, Durham reported that she was able to complete self-care tasks, manage her finances independently, and occasionally socialize with family and friends. (R. 461). None of Plaintiff's own reports regarding her abilities indicate that she is disabled from all work.

Thus, the ALJ accounted for the Plaintiff's mental limitations in his RFC assessment when he found that Durham was limited to light work "except for that which ... cannot be done by an individual who has moderate deficiencies of concentration, persistence, or pace." (R.26). Therefore, the ALJ's decision is supported by substantial evidence.

**B.    The ALJ Afforded Appropriate Weight to Dr. Humphries' Opinion.**

During oral argument, Durham argued that the ALJ erred by affording Dr. Humphries' opinion more weight than it was entitled in light of the inconsistencies between the reviewing physicians' opinions and those of Dr. Humphries.[6] After reviewing the records of Dr. Humphries and the State agency reviewing physicians, the Court concludes that this difference in

---

[5] Durham's comment that her symptoms had improved with the use of medication is particularly relevant because "if a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965); 20 C.F.R. § 404.1530).

[6] This argument was not developed in Plaintiff's brief beyond a conclusory sentence stating: "There is clear and sufficient evidence in the record to establish and corroborates this claimant's mental and physical health problems including pain, multiple limiting conditions and her inability to perform previous jobs she held."

6

opinion is immaterial as the ALJ only afforded weight to that portion of Dr. Humphries' opinion that was not contradicted by the opinions of the State agency reviewing physicians. Thus, the ALJ afforded appropriate weight to Dr. Humphries' opinion.

The inconsistency between Dr. Humphries' opinion and those of the reviewing physicians' stems from a disagreement about how much Durham could reasonably lift in light of the limitations on the use of her hand. In his opinion, the ALJ stated "According appropriate weight to the opinion of Dr. Humphries, I find that capacity for work at the light level of exertion is reduced by the inability to perform jobs that require more than occasional pushing or pulling with the upper extremities." (R. 28). Dr. Humphries opined that Durham "would be limited to sitting, standing and walking 6 hours a day in an 8-hour work day, to lifting 50 pounds occasionally and 25 pounds frequently. She would be limited to occasional gripping and grasping with either upper extremity and she would be limited to occasional climbing and no crawling."[7] (R. 368). However, Drs. Richard Surrusco and Donald Williams, the State reviewing physicians, opined that "with some limited use of one hand, it would not be reasonable to expect that the claimant would be able to lift 25/50 pounds." (R. 375, 400). Because the ALJ limited Durham's RFC to light work, it is clear that the ALJ did not place any weight on Dr. Humphries' opinion that Durham could lift 25 pounds frequently and 50 pounds occasionally. Moreover, Dr. Humphries' opinion that Durham would be limited to occasional gripping and grasping with her upper extremities is not contradicted by the opinions of the State reviewing physicians. Accordingly, the ALJ's decision to afford appropriate weight to the opinion of Dr. Humphries is supported by substantial evidence.

---

[7] Dr. Humphries performed a consultative examination on March 17, 2008. (R. 365).

## IV. Conclusion

After review of the record, this Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, this Court **GRANTS** the Commissioner's Motion for Summary Judgment and **DENIES** the Plaintiff's Motion for Summary Judgment. An appropriate order shall this day issue.

The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to all counsel of record.

ENTER: This  8th  day of December, 2011

*James C. Turk*
Senior United States District Judge